UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE HUMANE SOCIETY OF THE UNITED STATES, *et al.*,

PLAINTIFFS

v.

TOM VILSACK, SECRETARY OF THE UNITED STATES DEPARTMENT OF AGRICULTURE

DEFENDANT

CIVIL ACTION NO. 1:12-CV-1582 ABJ

# **PLAINTIFFS' SUPPLEMENTAL MEMORANDUM ADDRESSING PORK PRODUCER STANDING TO CHALLENGE VIOLATIONS OF THE PORK ACT AND ORDER**

## CASES

*Alto Dairy v. Veneman*, 336 F.3d 560 (7th Cir.2003) .......... 3
*Arkansas Dairy Co-op Ass'n, Inc. v. U.S. Dept. of Agr.*, 573 F.3d 815 (D.C. Cir. 2009) .......... 3
Block *v. Community Nutrition Institute*, 467 U.S. 340 (1984) .......... 3
*Edaleen Dairy, LLC v. Johanns*, 467 F.3d 778 (D.C. Cir. 2006) .......... 3
*Federal Election Comm'n. v. Akins*, 524 U.S. 11 (1998) .......... 5
*Railway Labor Executives' Ass'n v. U.S.*, 987 F.2d 806 (D.C. Cir. 1993) .......... 5
*Stark v. Wickard*, 321 U.S. 288 (1944) .......... 2, 3

## STATUTES

7 U.S.C. § 4801 .......... 4
7 U.S.C. § 7401(b) .......... 4

## FEDERAL REGISTER

65 Fed. Reg. 43,498 (July 13, 2000) .......... 1

## CONGRESSIONAL RECORD

131 Cong. Rec. S00000-04 (Nov. 20, 1985) .......... 4
131 Cong. Rec. S00000-31 (Nov. 21, 1985) .......... 1
136 Cong. Rec. H11029-01 (Oct. 22, 1990) .......... 4

Pursuant to the Order entered on May 31, 2013, Plaintiffs file this memorandum to address the legally protected particularized interest of the producer Plaintiff in this action.

## I. The Pork Checkoff is a producer-funded self-help program in which producers have legally protected and particularized interests.

> "[T]he pork promotion legislation establishes a *self-help program for pork producers* to be operated at *no cost to the Nation's taxpayer*."

Senator Zorinsky (sponsor), 131 Cong. Rec. S00000-31 (Nov. 21, 1985)(emphasis added). Defendant's argument that this case presents "nothing more than a generalized grievance" and an interest only "in the lawful and prudent use" of checkoff funds flatly mischaracterizes the claim and the statute at issue. The assertion that producers don't have a legally protected and judicially reviewable interest in enjoining violations of the Pork Act and Order is contrary to this circuit's case law, the clear legislative intent regarding checkoff programs, and even Defendant's own acknowledgement of accountability to producers in administering the program. In calling for a referendum to determine whether producers favored termination of the checkoff, USDA explained that "[s]upport of the program by a majority of persons who pay assessments is essential to both the establishment and the continuation of this program." 65 Fed. Reg. 43498 (July 13, 2000).

At the outset, it should be stated clearly that Plaintiffs' complaint *does not* challenge any "lawful" checkoff activity with which they simply disagree. Plaintiffs do not challenge *unwise* checkoff expenditures, but *unlawful* checkoff expenditures.[1] The conduct Plaintiffs challenge in this case is—and always has been—alleged to be violations of the mandated standards and prohibitions with which checkoff expenditures must lawfully conform. Producers have a legally protected and particularized interest in enjoining prohibited uses

---

[1] Defendant's use of the *McDowell* opinion is misplaced in this regard. The Judicial Officer in that matter was reviewing a finding of the Administrative Law Judge that the challenged expenditures were not violations of the Pork Act or Order, but violations of "public policy" (which, by definition, would be shared by the public generally). *See,* 65 Agric. Dec. 795 (2006). This case alleges definite violations of law that invade legally protected interests of the producers funding the program.

of their self-imposed assessments to assure protection of their congressionally conferred legal interests in the checkoff program.

The economic interest of producers in the pork checkoff program is easily quantified by reference to the most recent "Return on Investment" report issued in 2011.[2] That report found that across all activities, the average producer dollar *invested* in the checkoff program provided them with a $17.4 return. Checkoff funds that are unlawfully diverted from the program injure producers by depriving them of their legally protected rights to an effective promotional program and expected return on their investments under the Pork Act and Order. Diversion of three million producer dollars from the checkoff program annually can be expected to reduce the return to producers by *$51 million every year*; if the remaining annual payments for the retired trademark are approved, the expected reduction in return to producers from their checkoff investment would exceed *$600 million*.[3]

This unlawful diversion of producer funds from the checkoff program is the type of legally protected interest at issue in *Stark v. Wickard*, 321 U.S. 288 (1944). *Stark* involved an allegation that the Secretary was unlawfully diverting funds from a milk producer settlement fund. In finding milk producers had standing, the Court very succinctly stated that "**[i]t is because every dollar of deduction comes from the producer that he may challenge the use of the fund**." *Id.* at 308 (emphasis added).

Further, because there was no administrative forum to hear the complaint in that case, judicial review was appropriate to ensure an aggrieved producer could seek appropriate relief.[4] *Id.* at 309-10.

---

[2] 2011 Return on Investment, pp. 4-5, www.pork.org/AboutUs/2411/ReturnonInvestment1.aspx

[3] Plaintiffs have also alleged that they would be entitled to an ownership interest in the trademark from the two decades of promotional funding that added to its value. The deprivation of such interest constitutes a separate and equally justiciable financial injury.

[4] *Stark* also expressly rejected the government's argument that allowing judicial review would put "the agency at the mercy of objectors," noting that there were adequate judicial safeguards to

As in *Stark*, the pork checkoff is funded by pork producers. As in *Stark*, the producer Plaintiffs in this case have alleged an *unlawful* use of their checkoff funds, which has caused them economic and other injuries. As in *Stark*, there is no administrative option to seek appropriate relief. Thus, as in *Stark*, this Court is the appropriate forum—and, indeed, the *only* forum—for the aggrieved producer Plaintiffs to seek review and remedy for the unlawful violations of their protected interests.[5] *See also*, *Edaleen Dairy v. Johanns*, 467 F.3d 778, 782-3 (D.C. Cir. 2006); *Alto Dairy v. Veneman*, 336 F.3d 560, 568-9 (7th Cir.2003).

Recently, in *Arkansas Dairy Co-op Ass'n, Inc. v. U.S. Dept. of Agr.*, 573 F.3d 815 (D.C. Cir. 2009), this circuit further addressed the rights of producers when they are the beneficiaries of a legislated agricultural program. The court reviewed the holdings in *Stark* and *Block v. Community Nutrition Institute*, 467 U.S. 340 (1984), which distinguished between the interests of consumers generally and those of producers who are "entitled to participate in the adoption and retention of market orders." *Block* at 346. Commenting on the legislative scheme of the AMAA, the court found that producers were intended to have an active role and therefore occupied a status different than that of the public generally. *Arkansas Dairy* at 822-3. In granting producers standing to seek relief under the Administrative Procedure Act, the Court held that unless producers "may have judicial review the statutory objectives might not be realized." *Id.* at 823.

---

prevent such a result without precluding relief for otherwise justiciable claims. *Stark* at 310. Plaintiffs in the instant case are not objectors to lawful agency action, but aggrieved persons seeking judicial review for relief from *unlawful* action.

[5] Defendant's repeated arguments that producers may seek exemption from assessments is without merit and, in fact, would only add an additional injury to producers. As noted herein, each dollar invested in the checkoff increases their return; each dollar removed diminishes it. Producers seeking exemptions from the program only diminish its overall effectiveness, and do nothing to stop the unlawful conduct of which producers complain.

## II. Producer interests in preventing unlawful violations of the checkoff program are distinct from the general public and fully establish Article III standing.

The record is replete with the active role that producers play in the pork checkoff program, the accountability that Congress expects of the Pork Board and the Secretary, and the protected interests producers derive from the Pork Act and Order.[6] The Pork Board itself is an instrumentality of government under the authority of Defendant. Producer funds are "entrusted" to the Board, which is required to treat them as public trust deposits.[7] The producers are effectively the beneficiaries of the trust, who are owed a fiduciary duty by the Defendant.

Producers approved the initial Pork Order by referendum in May 1988. That vote, which made the self-imposed assessments mandatory, was made on the assurance that this government-supervised promotion program would spend producer funds in accordance with certain minimum standards, and would prohibit their use for policy-based messaging or activity. Senator Grassley expressly commented on this during the debate on passage of the Pork Act: "[W]e should protect against making these producers *de facto* members of any association that they may not wish to be involved with." 131 Cong. Rec. S00000-04 (Nov. 20, 1985). *See also*, 7 U.S.C. § 7401(b) (Congressional findings); 7 U.S.C. § 4801 (Congressional findings and declaration of purpose).

Despite the overwhelming contrary precedent, Defendant argues—without factually analogous authority—that the "public at large" shares the same legal interest in the checkoff as producers. This case, however, is *not* a dispute over a generalized concern for faithful execution of law, but over a particular injury to a legally protected interest of the

---

[6] *See, for example,* "Producer Research and Promotion Board Accountability," 136 Cong. Rec. H11029-01, H11193 (Oct. 22, 1990): "[T]he producers and importers that pay assessments to support the programs must have confidence in, and strongly support, the checkoff programs if these programs are to continue to succeed…"
[7] 7 U.S.C. § 4809(f)(1); *See also* AMS Guidelines for Oversight of Research and Promotion Boards.

named Plaintiffs. *See generally, Federal Election Comm'n. v. Akins*, 524 U.S. 11, 24–25 (1998).

Finally, respecting the Court's inquiry about the injury of producer members of the organizations, the analysis herein would fully support a finding of representational standing. However, the Court need not reach that issue, as standing for the individual producer *alone* fully establishes the Court's jurisdiction over this matter:

> It is a longstanding principle that courts should avoid passing on constitutional issues unless the resolution of these issues is necessary to the disposition of the case. … In accordance with this principle, the Supreme Court has repeatedly held that if one party has standing in an action, a court need not reach the issue of the standing of other parties when it makes no difference to the merits of the case.

*Railway Labor Executives' Ass'n v. U.S.*, 987 F.2d 806, 810 (D.C. Cir. 1993).

## CONCLUSION

Defendant's argument that producers do not have a legally protectable, particularized interest in the checkoff program is the equivalent of arguing that a trust beneficiary doesn't have a particularized interest in the trust, that a corporate stockholder doesn't have a particularized interest in the corporation, or that an investor doesn't have a particularized interest in the investment. From top to bottom, the pork checkoff program is a producer-approved and producer-funded program designed to provide a unique economic benefit to producers in the form of a return on investment. The public generally may be disappointed in unlawful checkoff activity, but it is the producers that suffer a concrete and particularized injury to congressionally recognized and legally protected interests from such violations. Accordingly, Defendant's motion to dismiss should be denied.

Respectfully submitted on June 10, 2013.

/s/ Matthew E. Penzer

Matthew E. Penzer, Bar ID CO0016
Humane Society of the United States
2100 L. St., N.W.
Washington, DC 20037
(240) 271-6144
(202) 676-2357 Facsimile
Counsel for Plaintiffs