# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

THE HUMANE SOCIETY OF THE
UNITED STATES *et al.*,

     **Plaintiffs,**

v.

SONNY PERDUE, Secretary of the
U.S. Department of Agriculture,

     **Defendant.**

Civil Action No. 1:12-cv-1582 (ABJ)

### PLAINTIFFS' OPPOSITION TO MOTION TO ALTER OR AMEND JUDGMENT

Despite this Court's ruling that Defendant's decision to continue Purchase Agreement payments based on its 2016 review "was arbitrary and capricious and unmoored from the facts and circumstances before the agency," (ECF No. 70) Defendant nonetheless asks the Court to permit yet another payment to be made pursuant to that flawed review. To do so, Defendant engages in semantic word play to limit the Court's ruling to enjoin only future payment *approvals*, then argues that this year's payment has already been *approved* although it still must be *authorized* by the agency before payment can be made. *See* Defendant's Motion to Alter or Amend Judgment, ECF No. 71. But having determined that the 2016 review fails to justify Defendant's decision to permit continued payments, any further agency action that would allow payment based on that review should be enjoined.

Moreover, the Court's finding that payment approvals based on the 2016 review are arbitrary and capricious necessarily triggers Defendant's continuing legal duty and power to protect against misuse of checkoff funds. Defendant should affirmatively be exercising that duty

1

to prohibit unjustified expenditures, in 2018 and beyond, and ensure those funds are immediately directed toward lawful promotional activities.

**The Court's Ruling Enjoins Defendant from Signing Off on Any Further Payments Based on the 2016 Review**

Defendant's strained attempt to distinguish annual budget "approvals" from expenditure "authorizations" raises a distinction without a difference.[1] See Payne Declaration, ¶¶ 7-8, ECF No. 71-1. Whatever the terminology, the Secretary has not yet completed all steps that would permit the 2018 payment to be made. Any further steps the Secretary makes toward permitting such payment would be driven by an underlying justification that this Court has rejected. Even if the Court's judgment was somehow ambiguous in its text or essence—which Plaintiffs do not believe is the case—the relevant temporal question is not whether the Secretary *initiated* some part of the payment approval process prior the Court's decision, but whether the Secretary may now proceed to *complete* that approval process.[2] If Defendant proceeds to give final approval for the 2018 payment, three million dollars that could still be directed toward lawful promotional activity this year would be lost, and for reasons the Court has found cannot pass muster under APA review.

---

[1] Even if we assume there is some technical distinction between agency "approvals" and "authorizations," the actual text of the purchase orders don't support Defendant's position that that they are authorizations. Instead, the purchase orders contain a section headed "PO Approvals" in which AMS—the division designated to act on the Secretary's behalf—has the following two options: "AMS Approved PO By:_____" or "AMS Reject PO By _____". *See, for example,* 2010 PTOWM Purchase Order, AR 458.

[2] The Pork Act, Order, and Guidelines contain distinct provisions for approvals of anticipated budget expenses and of contract payments, so Defendant's attempt to paint the latter as some sort of ministerial formulaic activity is contrary to clear legal authority giving each decision separate significance. *See, for example,* 7 USC § 4808(2)(A) and (4)(A)(ii) and 7 CFR § 1230.58 (e)(1) and (f) (separately requiring the Secretary's approval for annual budget "anticipated expenses and disbursements" and for approval of contract cost payments).

Plaintiffs could certainly meet Defendant's literary scalpel by noting that the Court's specific injunction was against approving "any future payments based on the 2016 review." ECF No. 70, p. 41. Since actual payments are made by requesting purchase orders (rather than general budgets), there hasn't yet been a 2018 *payment* approval. We could note that the actual text of purchase orders requires "approvals" not "authorizations." *See, for example,* 2010 PTOWM Purchase Order, AR 458. Or we could point out that despite the Secretary's tortured framing of the process, the purchase order "authorization" would be based on a budget approval that the Secretary now knows is not defensible by APA standards. The Secretary cannot willfully ignore that the grounds on which the payment is proceeding has been rejected by the Court.

At bottom, the essence of the Court's order was that the 2016 review does not establish the reasoned decisionmaking required by the APA to permit further payments on the contract at issue. It is itself arbitrary for the Secretary to treat the Court's injunction as directed to some random point in the approval process, rather than to give it full application to prevent the arbitrary signing off on further payments (whether labeled budgetary or purchase orders) based on the 2016 review.

**Defendant's Motion Is Contrary to his Obligation to Prevent Misuse of Checkoff Funds**

The contrived distinctions between various sign-off stages in the approval process on APA-deficient payment decisions is alone sufficient to defeat the government's motion. But additionally, Defendant's fiduciary oversight role over checkoff expenditures carries a duty to ensure that producer funds are used lawfully, and equally a duty to stop actions of the Board that the Secretary knows are unlawful. In light of these ongoing duties, the Court's injunction serves the effect of putting the Secretary on notice that the 2016 review cannot withstand APA scrutiny, thereby obligating the Secretary to affirmatively stop expenditures based on that review. The

3

Secretary certainly cannot validly take the position that he lacks the authority, at any time, to stop unlawful checkoff activity or misuse of checkoff funds.

Indeed, Defendant's oversight guidelines expressly require that Boards "expend all funds … in accordance with the act, order, regulations, and AMS policy." See Guidelines, Sec. V(C). A.R. 783. Any inappropriate or misuse of checkoff funds *must* be reported to AMS or USDA's Inspector General "for investigation or other appropriate action." *Id.* Ultimate authority and liability for such activity runs against the Secretary. *See HSUS v Vilsack*, 797 F.3d 4, 7 n.1 (D.C. Cir. 2015). Thus, the Secretary is charged with stopping the misuse of checkoff funds, not seeking permission to let another payment be made based on reasons the Court has already rejected.

In fact, until this case the Secretary had fully acknowledged his authority and control over checkoff activity and spending. In a previous APA case challenging unlawful checkoff activity and expenditures—portions of which were being transferred to a private trade group—both the Secretary and relevant checkoff board were initially named as Defendants. But the Board was dropped on the Secretary's assurance that "he controls the activities and expenditures" of the checkoff board at issue in the case and that he would require the Board to comply with "any order the Court enter[ed] in the case" and thus the Board was "not a necessary or proper party."[3] *Californians for Humane Farms v. Schafer*, 2008 WL 4449583 (N.D. Cal. Sept. 29, 2008). In that case, the Court issued an affirmative injunction ordering the Secretary (and the Board, despite having been dismissed as an unnecessary party on the Secretary's representation of control) from "undertaking, authorizing, facilitating, or allowing" the

---

[3] *See* Joint Stipulation (Document 18), *Californians for Humane Farms v. Schafer*, N.D. Cal., 3:08-cv-03843-MHP ("The Secretary represents and agrees that he controls the activities and expenditures of the [American Egg Board] that are at issue in this case, that he will require the AEB to comply with the terms of this stipulation and any order the Court enters in this case, and that therefore, the AEB is not a necessary or proper party.").

expenditure of a $3 million line item in its budget, previously approved by USDA, on activities in opposition to a 2008 California ballot measure relating to farm animal welfare, as well as any other Board funds for that purpose. *Id.* at 9-10.

The government itself demonstrated the degree of its oversight and control of the checkoff boards by aligning itself with an IRS determination that checkoff boards are, in fact, "an integral part of the Department of Agriculture." Brief for the Federal Petitioners, *Veneman v. Livestock Marketing Association*, 2004 WL 1905738, 22 (U.S. 2004). Plaintiffs understand, of course, the Court found there to be a degree of legal distinction between the Pork Board and the agency. *See* ECF No. 70, p. 22. But regardless of the degree or exact nature of that distinction, what is clear is that the statutory and constitutional framework create in the Secretary an affirmative and ongoing duty to prevent the misuse of checkoff funds, and accompanying investigative and enforcement power to carry out that duty.[4]

Defendant has yet to explain "why it makes sense to predicate future payments on the cost of replacing The Other White Meat when the cost of replacing The Other White Meat has already been incurred." ECF No. 70, p. 4. Nor has Defendant made any attempt to justify payment for trademarks that have been "declared to be obsolete" and "retired from active use." *Id.* Yet instead of recognizing that its decision to continue payments based on the 2016 review was "unmoored from the facts and circumstances before the agency," Defendant asks if the Court meant to enjoin *all* remaining arbitrary and capricious payments, or *all but one* remaining

---

[4] During the instant case, the Secretary exercised his affirmative duty and authority to protect checkoff funds against misuse by sanctioning the Board for an advisement and public petition to "mount a vigorous defense" in support of the PTOWM payments. Boards are prohibited from engaging in any activity to influence government policy or action, including in this case any effort to affect the outcome or the Secretary's handling of the case. The Secretary ordered the Board to "account for and reimburse all pork checkoff funds" related to the improper advisement,          petition,          and          their          dissemination.          *See* https://www.ams.usda.gov/content/agricultural-marketing-service-ams-approving-continuing-annual-payments-national-pork.

arbitrary and capricious payments. If, as is the case here, it is within the Secretary's power to stop the injury from arbitrary and capricious action before it occurs, the Secretary's obligation to do so is clear.

## Conclusion

While there are many reasons Defendant's motion to alter or amend judgment should be denied, the most obvious one is simply that the agency still hasn't completed all review and approval steps before the 2018 payment can be made. Whether approved as an anticipated budget expense or a purchase order payment, Defendant should be enjoined from any action that permits payments to proceed based on the 2016 review found by this Court to be arbitrary and capricious so that producers are not improperly denied the lawful use of such funds while the Secretary still has power to prevent it.

As to Defendant's affirmative and fiduciary obligations to protect checkoff funds against misuse, Defendant should be determining how best to mitigate harm from the two payments already made under the deficient 2016 review instead of seeking the Court's permission to increase the harm by adding a third payment based on the same arbitrary and capricious grounds.

Plaintiffs oppose the motion.

Mar. 7, 2018

Respectfully submitted,

*/s/ Matthew E. Penzer*
MATTHEW E. PENZER
1255 23rd Street, N.W., Suite 450
Washington, D.C. 20037
(240) 271-6144
mpenzer@humanesociety.org
*Counsel for Plaintiffs*