# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

THE HUMANE SOCIETY OF THE
UNITED STATES *et al.*,

    **Plaintiffs,**

**v.**

SONNY PERDUE, Secretary of the
U.S. Department of Agriculture,

    **Defendant.**

Civil Action No. 1:12-cv-1582
(ABJ)

### PLAINTIFFS' RESPONSE TO DEFENDANT'S NOTICE

For the second time now, Defendant strains to find a mechanism to squeeze one last payment through non-existent cracks in the prohibitions of this Court's injunction. Here, despite a clear and binding judgment enjoining all future payments on the purchase agreement, Defendant proposes to "voluntarily" choose to stop making those same future payments the Court has already enjoined. But while simple compliance with the Court's order to stop future payments would cost producers nothing and allow three million dollars to be used for lawful promotions, Defendant's desire to make the decision his own choice (rather than the Court's) will cost producers those three million dollars of promotions and instead divert those funds to yet another future contract payment (which the Court has now explained multiple times are enjoined). Defendant intends to execute this plan pursuant to a unique theory that he is not bound by the Court's injunction until his time to decide whether to pursue an appeal has run, and also suggests that a voluntary termination payment would not be prohibited by the Court's injunction. Defendant is quite wrong on both counts.

1

Defendant's "termination" payment would violate the terms of the injunction, which this Court has specifically made clear encompasses *any* future payments under the agreement (and which included the "voluntary termination" clause within its scope). *See* Order, ECF No. 75. That injunction took immediate effect upon its issuance. *See* F.R.C.P. 62(a)(1). Whether or not Defendant disagrees with the ruling or intends to pursue an appeal, he is nonetheless presently bound by the injunction against making any additional payments under the contract.[1]

### The Court's injunction prohibiting *all* future payments precludes Defendant's "voluntary" termination payment.

As the Court noted, this "case is and has always been first and foremost about the use of checkoff funds." Order, ECF No. 75, p. 2. The Court granted summary judgment for Plaintiffs on what was deemed to be Count IV, which "challenges the decision made in 2016 *not to terminate*[2] the Purchase Agreement and all *future payments* based on that decision as arbitrary, capricious, an abuse of discretion, and/or otherwise not in accordance with law." Memorandum Opinion, ECF No. 70, p. 26 (emphasis added); Order, ECF No. 75, p. 5 (first emphasis added). In its amended order last month, the Court made abundantly clear that its injunction covered *all* future payments under the contract, not *all but one* future payment. *Id.* at 4 (stating that the Court specifically granted plaintiffs' motion for summary judgment, and noting the motion sought an order "*enjoining further payments* under the agreement" and Plaintiffs' proposed order seeking to enjoin "any further payments under the Purchase Agreement" ) (emphasis in Court's order).

---

[1] Defendant's unusual decision to file a "notice" of intended action in a closed case—that seeks no relief from the Court—stands in conspicuous contrast to its previous motion seeking the Court's sign-off on a 2018 contract payment. Defendant's notice surely casts doubt on his own confidence in the lawfulness of attempting to make yet another contract payment in the wake of the Court's clear prohibition against it.

[2] Defendant's claim that the "voluntary termination" clause and payment were "independent of the legal claims at issue in this case" or outside the scope of the Court's injunction against future payments conflicts with even the most cursory reading of the Court's orders.

Despite the Court's order enjoining further payments (which it held to be arbitrary and capricious), Defendant shockingly suggests the Court nonetheless recognized a contractual obligation to make one additional contract payment. ECF No. 77, p. 1. The Court did no such thing. Defendant attempts to wring this illogical claim from the "Factual Background" section of the February 2018 memorandum opinion, in which the Court merely recognized that the purchase agreement contained a voluntary termination provision that could have been exercised, but wasn't. *See* ECF No. 70, p. 11. The factual recognition that a contract provision exists and could have been exercised is not an "acknowledgement" that it may be exercised after an injunction has issued.[3]

Defendant's claim that a contractual agreement to make a payment survives—and outranks—a Court's injunction against making such payments would translate to an agency superpower to contractually bypass APA statutory requirements, e.g., "if payments under this contract are found to be arbitrary and capricious and enjoined by a court, the agency nevertheless agrees to make one more arbitrary and capricious payment that the court is powerless to stop." The same premise could be extended to permit an agency to enter into contract terms that would allow it to "voluntarily" terminate the contract and pay the entire balance remaining on it if that contract is adjudged to be arbitrary and capricious.

But Defendant has no power—or need—to invoke a voluntary termination clause in order to stop future payments that the Court has already enjoined. Defendant could have chosen to terminate the contract at any time during this litigation, but instead chose to defend his decision to continue payments on the basis of the 2016 review decision.

---

[3] As noted above, what was deemed to be Count IV of Plaintiffs' complaint included an express challenge to Defendant's failure to invoke the voluntary termination clause to protect checkoff funds from being improperly diverted from lawful uses. Counts II and III of the complaint included similar claims. See ECF No. 75, pp. 3, 5.

3

**Defendant is bound by the Court's injunction, regardless of his claim that the legality of payments is "not settled."**

This Court's judgment enjoining future payments has immediate binding effect. *See* F.R.C.P. 62(a)(1). No stay of that judgment has been applied for or issued. Indeed, Defendant previously recognized that if the Court did include the 2018 payment in its injunction against future payments (which it clearly has at this point), "the agency would need to consider whether to move for a stay to preserve its ability to appeal." ECF No. 73. Yet Defendant now appears to be simply granting itself a stay of the injunction by claiming that "the legality of the agency's approvals is not settled until it has made a decision about appeal, and then until any appeal is exhausted." *Id.*

The import of Defendant's position is that if he elects to terminate all future payments (i.e., the balance of the contract) prior to the appeal deadline, such election is "voluntary" because Defendant could choose to appeal instead of complying with this Court's judgment enjoining future payments. There is no basis in law for Defendant's theorized 60-day "unsettled" period after issuance of the Court's injunction in which he has freedom to decide whether to comply with the judgment or appeal. Regardless of Defendant's position on whether the legality of future payments is settled, the prohibition against making those payments is immediately effective and binding.

Finally, Defendant's plan to move up the intended payment date to June 15, in order to beat the deadline to appeal the Court's injunction is utterly illogical. Even if we assume a 60-day stay of the injunction was ordered to allow an appeal decision, no payment is due prior to that date. If Defendant elects not to appeal, his position is that this Court's judgment then becomes settled law and the injunction against any future contract payments would take effect. That

4

would mean that on July 1, Defendant would, in compliance with the Court's injunction, have three million additional checkoff dollars to spend on lawful promotional activity.[4]

Defendant's self-proclaimed, but non-existent, timing problem needn't murk up clear legal waters. Defendant may appeal the injunction if he chooses, but absent a Court-ordered stay he may not violate its clear prohibition against any further payments under the purchase agreement.

**Defendant's plan to make a further payment is contrary to representations made to the Court in briefing and at the summary judgment hearing.**

Separate from the unsupportable legal positions of Defendant's second attempt to make an additional contract payment, a particularly troubling aspect of Defendant's current position is that it contradicts the representations made to the Court in briefs and in particular at the summary judgment hearing. Defendant's position was clear: the original contract purchase decision and all prior approvals were moot and *supplanted* by the 2016 review.[5] *See, for example*, ECF No. 54-1, p. 29. Defendant should explain to this Court how he can now take the position that even one dollar—let alone three million dollars—of payment obligations survive the Court's grant of summary judgment for Plaintiffs on its challenge to the 2016 review decision, which Defendant expressly represented as the single controlling decision for all future purchase agreement payments.

---

[4] If the payment due date *preceded* the appeal deadline, Defendant's timing concerns would at least make some sense. His assertion of authority to make the payment would still be wrong, because there is no automatic stay of injunctions while deciding an appeal, as discussed *infra*. But the timing concern would at least make some sense.

[5] Specifically, Defendant's position was that the 2016 review decision "supplanted" the 2006 purchase decision and all previous payment approvals, as "it reconsidered and determined anew USDA policy with regard to continued payments. AR 1-12. Any injury Plaintiffs might suffer from those continued payments, then, is fairly traceable to the 2016 review—not the agency's now-superseded actions—and Plaintiffs can obtain redress only through a challenge to that decision."

5

**Conclusion**

Defendant's repeated attempts to avoid the result in this case should not be countenanced. First, the Defendant unsuccessfully claimed that he could make a 2018 payment on the theory that he had "approved" it prior to the date the Court's order was issued—even though that "approval" was based on the arbitrary and insufficiently supported rationale of the 2016 Review, and even though he still had yet to cut the check. Now, Defendant has resorted to brazenly putting the Court and Plaintiffs on "notice" that he is going to make the payment anyway, based on a theory that he can still take "voluntary" action under the contract because his time to file an appeal has not passed (and assertion he could have made in his first post-judgment motion).

But Defendant's plans to make a further payment on the purchase agreement would violate this Court's unambiguous injunction prohibiting such future payments. And Plaintiffs and the Court have had to spend unnecessary time and resources responding to Defendant's unsupportable post-judgment filings. The Court possesses broad inherent powers to prevent such abuses, and the Court should employ them here to prevent another three million checkoff dollars from being improperly diverted from the program.

May 31, 2018                                    Respectfully submitted,

                                              */s/ Matthew E. Penzer*
                                              MATTHEW E. PENZER
                                              1255 23rd Street, N.W., Suite 450
                                              Washington, D.C. 20037
                                              (240) 271-6144
                                              mpenzer@humanesociety.org
                                              *Counsel for Plaintiffs*

6